IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ESMOND L. SANFORD, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 3:14-cv-00566-MJR-SCW |
| | ) |
| DONALD BUNTS, GARY BOST, | ) |
| ROBERT HERTZ, LT. HILL and | ) |
| LT. HOLLENBACK, | ) |
| | ) |
| *Defendants*. | ) |

**DEFENDANTS' MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF THEIR RULE 56 MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants, DONALD BUNT (Incorrectly referred to as "Donald Bunts"), GARY BOST, ROBERT HERTZ, MAYNARD HILL (Incorrectly referred to as "Lt. Hill"), and ROBERT HOLLENBECK (Incorrectly referred to as "Lt. Hollenback"), by and through their undersigned attorney, and pursuant to Local Rule 7.1(c), submit their combined Motion and Memorandum of Law in Support of their Rule 56 Motion for Summary Judgment. In support of Defendants' Motion, Defendants state as follows:

### I.   INTRODUCTION

On May 19, 2014, Plaintiff filed a Complaint against Madison County Jail and the Madison County Jail Medical Unit alleging violations of 42 U.S.C. § 1983 (Doc. 1). District Judge Michael Reagan reviewed Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A and divided Plaintiff's Complaint into five (5) counts (Doc. 7). Following his review, Judge Reagan issued a Memorandum and Order indicating that Plaintiff could only proceed on his claim that cold temperatures and deprivation of exercise amounted to cruel and unusual punishment (Doc. 7).

On June 19, 2014, Plaintiff filed a Motion for Leave to File an Amended Complaint (Doc. 9). This motion was denied (Doc. 12).

On June 24, 2014, Plaintiff filed a second Motion for Leave to File an Amended Complaint in which he sought to remedy issues in his original Complaint which led to the dismissal of four of his five claims (Doc. 10). On July 3, 2014, this motion was granted in part and denied in part (Doc. 12). Specifically, the Court granted Plaintiff leave to file an Amended Complaint (Doc. 12). Plaintiff did not file an Amended Complaint; rather, on July 15, 2014, Plaintiff filed a Motion to Request Amendment of Complaint (Doc. 13), and on September 12, 2014, Plaintiff filed a Motion for Amended Complaint (Doc. 26).

On January 26, 2015, the Court granted Plaintiff's Motion to Request Amendment of Complaint and divided Plaintiff's Complaint into five (5) counts (Doc. 36), which are as follows:

- Count I: Conditions of confinement claim against Defendants Bunt, Bost, and Hertz for an unhealthy diet causing Plaintiff high blood pressure.

- Count II: Conditions of confinement claim against Defendants Bost, Bunt, Hill, and Hertz for cold showers in a cold facility.

- Count III: Conditions of confinement claim against Defendants Bunt, Bost, Hollenbeck, Hill, and Hertz for Plaintiff's inability to exercise.

- Count IV: Conditions of confinement claim against Madison County Jail for a cold jail cell.

- Count V: Deliberate indifference claim against Defendants Bunt, Bost, and Hertz for exposure to Hepatitis C by allowing an infected inmate to use communal razors.

{00357153.1}                                2

In response to Plaintiff's Amended Complaint, Defendants filed a Motion to Dismiss (Doc. 66). On March 1, 2016, the Court granted in part and denied in part said motion (Doc. 74). In particular, the Court dismissed Madison County Jail as a Defendant from Count IV (cold jail cell) and substituted Robert Hertz as a Defendant. The Court also dismissed Counts II (cold showers) and V (deliberate indifference) to the extent Plaintiff is suing Defendant Hertz in his official capacity.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. Proc. Rule 56.* In determining whether a genuine issue of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Tesch v. County of Greenlake,* 157 F.3d 465 (7th Cir. 1998). However, neither the mere existence of some alleged factual dispute between the parties, nor the existence of some metaphysical doubt as to the material facts, is sufficient to defeat a motion for summary judgment. *Id*.

### A.    Count I of Plaintiff's Amended Complaint Should Be Dismissed As He Was Provided Nutritionally Adequate Food.

In Count I, which is against Defendants Bunt, Bost, and Hertz (official capacity), Plaintiff alleges that during his detention he was provided an unhealthy diet.

Because Plaintiff Sanford is a pretrial detainee, his claims arise under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. *See Chapman v. Kilter*, 241 F.3d 842 (7th Cir. 2001); *Anderson v. Gutschenritter*, 836 F.2d 346, 348-49 (7th Cir. 1988). The relevant question for a due process analysis is whether the challenged condition of

confinement constitutes punishment that rises to the level of cruel and unusual punishment under the Eighth Amendment. *See Block v. Rutherford*, 866 U.S. 576, 583 (1984); *Tesch v. Cnty. Of Green Lake*, 157 F.3d 465, 473 (7th Cir. 1998).

To determine whether the conditions of confinement constitute cruel and unusual punishment, the Court utilizes a two-pronged analysis, consisting of both an objective and subjective component. *See Wilson v. Seiter*, 501 U.S. 294, 299-302 (1991).

The objective component requires the Court to determine whether the alleged deprivation – the condition itself – was sufficiently serious to rise to the level of a constitutional violation. *Id*. The Constitution "does not mandate comfortable prisons" and only those deprivations denying the "minimal civilized measures of life's necessities" are serious enough to implicate the Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

The subjective component requires the Court to determine whether the defendant acted with the requisite culpable state of mind. *See Wilson*, 501 U.S. at 302. The subjective component is satisfied if a prison official acts with deliberate indifference, *i.e.*, the official knows of an excessive risk of inmate health or safety but disregards it. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Negligence and gross negligence are insufficient to demonstrate deliberate indifference. Instead, the defendants must have "intended for the plaintiff to die or suffer grievously." *Rapier v. Harris*, 172 F.3d 999, 1006 (7th Cir. 1999); *Salazar v. City of Chi.*, 940 F.2d 233, 240 (7th Cir. 1991).

Here, to prevail on his claim, Plaintiff Sanford must establish both the objective and subjective components. *See Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994). However, he cannot do so.

At his deposition, Plaintiff Sanford admitted that he was diagnosed with high blood pressure in 1996. *Exhibit C*, p. 8, Copy of Deposition Transcript of Plaintiff. Plaintiff further admitted that during the time period of 1996 through August of 2013, he did not take any medications for high blood pressure. *Exhibit C*, p. 11. More importantly, Plaintiff admitted that he never informed anyone affiliated with the Madison County Jail that the food being served at the Jail was impacting his high blood pressure. *Exhibit C*, p. 17.

The courts have repeatedly held that jails have an obligation to provide nutritionally adequate food. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1432 (7th Cir. 1996); *see also Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *French v. Owens,* 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied,* 479 U.S. 817 (1986) (quoting *Ramos v. Lamm,* 639 F.2d 559, 570–71 (10th Cir. 1980), *cert. denied,* 450 U.S. 1041 (1981)). In his Complaint, Plaintiff Sanford claims that he was not provided a proper diet. This is an erroneous assertion. The Affidavit of Gary Bost, Jail Superintendent of the Madison County Jail, establishes that the diet provided to pretrial detainees complies with the Illinois County Jail Standards and provides at least 1,800 calories per day and an adequate amount of nutrients. *Exhibit A*, Affidavit of Gary Bost. The Illinois County Jail Standards sets forth the minimum standards for operating county jails in Illinois. *Jackson v. Elrod*, 1988 WL 33823 (N.D.Ill.1988).

Further, the Affidavit of Dr. Blankenship, Medical Director of the Madison County Jail, establishes that Plaintiff never complained that he was receiving a nutritionally inadequate diet and/or that he was receiving inadequate treatment for his high blood pressure. *Exhibit B*, Affidavit of Dr. Robert Blankenship.

More importantly, nowhere does Plaintiff allege any facts indicating that the Defendants denied him a proper diet. In sum, the meals served to Plaintiff Sanford did not amount to

punishment. The food was nutritious, it varied, there were fruit and vegetables, and there was milk. The food served to Plaintiff, as well as other detainees, also complied with the Illinois County Jail Standards. Case law is clear that a jail is not required to serve fancy food; rather, it only needs to be nutritious, well-balanced and in adequate quantities. *Zingmond v. Harger*, 602 F.Supp. 256 (1985).

In order to prevail, Plaintiff Sanford must show that the conditions of his confinement were more than uncomfortable, and rose to the level of "conditions posing a substantial risk of serious harm" to inmate health or safety. Plaintiff Sanford is unable to meet this burden. Specifically, the conditions (*i.e.*, diet) during Plaintiff Sanford's confinement at the Madison County Jail did not rise to the level of deprivations of the minimal civilized measure of life's necessities. The only evidence Plaintiff presents to support his position that he was provided an inadequate diet is his own self-serving testimony. Contrary to his assertions, the evidence establishes that the food provided to pretrial detainees at the Madison County Jail complies with the Illinois County Jail Standards and is nutritionally adequate.

Based on the preceding, Plaintiff has failed to demonstrate that the conditions of his confinement posed a substantial risk of harm.

Plaintiff is also unable to establish that Defendants were deliberately indifferent to his health or safety. During his detention, Plaintiff was provided a nutritionally adequate diet, as well as treatment for his high blood pressure.

In the face of the preceding, Plaintiff Sanford's assertion that his diet was inadequate does not raise a genuine issue of fact for trial, and, as such, summary judgment should be granted for Defendants.

**B.     Counts II And IV of Plaintiff's Amended Complaint Should Be Dismissed As He Was Not Exposed To A Substantial Risk Of Harm Due To Cold Temperatures Or Cold Water.**

In Count II, which is against Defendants Bost, Bunt, Hill, and Hertz (individual capacity), Plaintiff alleges that he was exposed to extremely cold indoor air temperature and was forced to take cold showers. In Count IV, which is against Defendant Hertz (official capacity), Plaintiff again alleges that he was exposed to cold indoor air temperature.

As previously stated, to determine whether the conditions of confinement constitute cruel and unusual punishment, the Court utilizes a two-pronged analysis, consisting of both an objective and subjective component. *See Wilson v. Seiter*, 501 U.S. 294, 299-302 (1991). However, conditions may be uncomfortable and harsh without violating the constitution. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). The deprivations must be "extreme" for a conditions-of-confinement claim. *See Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001).

In assessing whether cold cell temperatures constitute cruel and unusual punishment, courts consider several factors, including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *See Dixon*, 114 F.3d at 643.

Here, Plaintiff Sanford has not established that he was exposed to excessively cold temperatures that subjected him to a "substantial risk of serious harm." The only evidence Plaintiff presents to support the alleged extreme cold is his own self-serving testimony. At his deposition, Plaintiff testified that other detainees informed him that the temperature was in the 50's. *Exhibit C*, p. 36. However, this is not correct as the measured temperatures at the jail ranged from 70.0 degrees to 75.0 degrees. *Exhibit A*. Further, Plaintiff had alternative means to

protect himself if he felt cold as he was provided clothing and blankets. At his deposition, Plaintiff admitted that he was always provided a dry towel to use after showering, as well as dry clothes. *Exhibit C*, p. 36. Plaintiff also testified that he was always provided a blanket. *Exhibit C*, pp. 36, 52. Plaintiff also testified that he had long-johns to wear. *Exhibit C*, p. 53.

Here, Plaintiff cannot present any case law authority establishing that cell temperatures in the 70.0 to 75.0 range deprive a detainee of constitutionally adequate warmth. *See Dace v. Smith-Vasquez*, 658 F.Supp.2d 865 (S.D. Ill. 2009) (finding lack of substantial risk of harm based on evidence that plaintiff was exposed to "excessively cold" temperatures for three weeks in December that caused plaintiff to "bundle up" to stay warm and caused plaintiff to catch a cold); *Hagemann v. Schmitz*, 2011 WL 38996, at *3-5 (E.D. Wis. Jan. 5, 2011) (finding lack of substantial risk of harm based on allegation that plaintiff was housed in a freezing cold cell in July and August where measured temperatures in the cell was 71.8 degrees, staff did not observe cold temperatures, and there were no complaints from others in the areas regarding excessive cold).

Defendants acknowledge that there was an issue with a hot water heater for a short period during Plaintiff's detention. However, during the brief period that the water heater was under repair, pretrial detainees still had access to lukewarm or cold water, and showers. During this brief period, pretrial detainees, including Plaintiff, were also allowed to shower in other Cellblocks where there was hot water. *Exhibit A*.

Based on the preceding, Plaintiff has failed to demonstrate that the conditions of his confinement posed a substantial risk of harm, *i.e.*, that the cold in Plaintiff's cell or the cold water was "sufficiently serious" to deprive him of the "the minimal civilized measure of life's necessities."

Further, Plaintiff cannot demonstrate that the Defendants were "indifferent" to Plaintiff's claims, let alone "deliberately indifferent." Plaintiff admitted that he was provided clothing and a blanket. Further, Defendants monitored the temperatures in the jail, and were not aware of any complaints regarding cold temperatures. The evidence also establishes that Defendants immediately responded to complaints regarding inadequate hot water by having the maintenance department inspect and repair the water heater. In sum, Plaintiff has not and cannot present any evidence demonstrating that the Defendants were "deliberately indifferent." *See Dace*, 658 F.Supp.2d at 880-81 (finding lack of deliberate indifference where plaintiff had clothing and bedding in his cell and defendants made efforts to correct the situation by submitting work orders); *Hagemann*, 2011 WL 38996, at *3-5 (finding lack of deliberate indifference when defendants responded to plaintiff's complaints and monitored temperatures of the area).

Here, there is no triable issue as to whether Defendants acted with deliberate indifference, and, as such, summary judgment for Defendants is warranted.

C. **Count III of Plaintiff's Amended Complaint Should Be Dismissed As Plaintiff Was Able to Exercise.**

In Count III, which is against Defendants Bunt, Bost, Hollenbeck, Hill, and Hertz (official capacity), Plaintiff alleges that he was denied exercise. The United States Court of Appeals for the Seventh Circuit has explained that "lack of exercise could rise to a constitutional violation '[w]here movement is denied and muscles are allowed to atrophy, (and) the health of the individual is threatened.'" *Harris v. Fleming,* 839 F.2d 1232, 1236 (7th Cir. 1988) (quoting *French v. Owens,* 777 F.2d at 1255). *See also Anderson v. Romero,* 72 F.3d 518, 527–28 (7th Cir. 1995); *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996) ("Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened.").

However, Plaintiff's own testimony negates his position that he was unable to exercise. At his deposition, Plaintiff admitted that during his detention he was able to exercise in his cell. *Exhibit C*, p. 39. Plaintiff admitted that he could perform push-ups in his cell. *Exhibit C*, p. 40. Additionally, Plaintiff admitted that during his detention he could run in place in his cell. *Exhibit C*, p. 41. Plaintiff also admitted that he could perform sit-ups and stretching exercises in his cell. *Exhibit C*, p. 42.

Clearly, Plaintiff's own testimony establishes that his movements were not restricted to the point that he was unable to exercise in his cell. In sum, the evidence establishes that Plaintiff's movement was not limited to the point of threatening his health. *See Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997). As such, the conditions during Plaintiff's detention at the Madison County Jail did not rise to the level of deprivations of the minimal civilized measure of life's necessities.

Based on the preceding, Plaintiff has failed to demonstrate that the conditions of his confinement posed a substantial risk of harm.

Additionally, Plaintiff cannot demonstrate that the Defendants were deliberately indifferent to his health or safety. During his detention, Plaintiff was allowed to exercise in both his cell and the dayroom of his cellblock.

In light of the preceding, Plaintiff Sanford's assertion that he was unable to exercise does not raise a genuine issue of fact for trial, and, as such, Defendants are entitled to summary judgment.

      **D.**    **Count V Of Plaintiff's Amended Complaint Should Be Dismissed As There Is No Evidence of Deliberate Indifference.**

In Count V, which is against Defendants Bunt, Bost, and Hertz (individual capacity), Plaintiff alleges deliberate indifference as a result of sharing razors with other pretrial detainees.

Although the Eighth Amendment does not apply to pretrial detainees, pretrial detainees are entitled to at least as much protection as the constitution provides convicted prisoners. *See Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003). The Eighth Amendment protects an inmate from a governmental actor's "deliberate indifference to his basic needs." *Id*. at 620. Under this standard, conduct is "deliberately indifferent" when the official has acted in an intentional or criminally reckless manner, *i.e.*, "the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998) (quoting *West v. Waymire*, 114 F.3d 646, 651 (7th Cir. 1997)). In *Armstrong*, the Court noted that "[u]nder other constitutional provisions [such as the Fourteenth Amendment] ... the standard for deliberate indifference appears closer to tort recklessness." *Id*. In recognition of this, the Court has articulated the test for deliberate indifference for Fourteenth Amendment purposes to be "a conscious disregard of known or obvious dangers." *Armstrong*, 152 F.3d at 577 (quoting *West*, 114 F.3d at 651). However, considering "the difficulty of peering into minds [of government officials or institutions]," this distinction is of little significance in practical application. *West*, 114 F.3d at 651. Thus, the Court has found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) "without differentiation." *Henderson v. Sheahan*, 196 F.3d 839, 845 n. 2 (7th Cir. 1999); *see Higgins v. Correctional Med. Servs. of Illinois, Inc.*, 178 F.3d 508, 511 (7th Cir. 1999); *see also Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997). In either case, the plaintiff has the burden of showing that: (1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately

{00357153.1}                                                11

indifferent to her health or safety. *Cavalieri*, 321 F.3d at 620; *see also Farmer v. Brennan*, 511 U.S. 825, 834–37, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Allegations that a prison official knowingly exposed an inmate to an infectious disease that might cause him future harm states a claim of deliberate indifference to a serious medical need. *See Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997); *see also McRoy v. Sheahan*, 188 Fed. Appx. 523, 525 (7th Cir. 2006). However, Plaintiff Sanford was not exposed to an infectious disease as he was not forced to share a razor with detainees who have Hepatitis-C. *Exhibit A*. Here, the evidence clearly establishes that while an electric razor is provided to each cellblock at the Madison County Jail, each cellblock is also provided a cleaning solution to sanitize and disinfect the razor after each use by a detainee. A separate electric razor is provided to each detainee that has Hepatitis-C (or any other communicable disease). *Exhibit A*. The evidence also establishes that this procedure complies with the Illinois County Jail Standards. *Exhibit A*.

Plaintiff Sanford has failed to establish that the Madison County Jail's policy regarding electric razors rose to the level of "conditions posing a substantial risk of serious harm" to his health or safety. Contrary to his assertions, the evidence establishes that the procedures regarding electric razors comply with the Illinois County Jail Standards. Further, at his deposition, Plaintiff admitted that he does not have Hepatitis-C. *Exhibit C*, p. 47. Specifically, Plaintiff has not suffered any type of injury as a result of the alleged actions of Defendants.

Plaintiff is also unable to establish that Defendants were deliberately indifferent to his health or safety. The evidence establishes that the Defendants provide detainees with a cleaning solution to sanitize and disinfect razors after each use. The evidence also establishes that the Defendants provide a separate electric razor to each detainee that had a communicable disease.

{00357153.1}  12

Clearly, there is no triable issue as to whether Defendants acted with deliberate indifference, and, as such, Defendants are entitled to summary judgment.

### E. Defendant Hertz Should Be Dismissed From Plaintiff's Amended Complaint As Plaintiff Failed to Establish Official and/or Individual Capacity Liability.

In Counts II and V, Plaintiff is seeking to impose liability on Defendant Hertz in his individual capacity. In Counts I, IV, and III, Plaintiff is seeking to impose liability on Defendant Hertz in his official capacity.

In order to prevail in an individual capacity claim, Plaintiff Sanford must establish that the Defendant caused the deprivation at issue. *Palmer v. Marion Co.*, 327 F.3d 588 (7th Cir. 2003). Specifically, liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *Schultz v. Baumgart*, 738 F.2d 231, 238 (7th Cir. 1984). An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *Rascon v. Hardiman*, 803 F.2d 269 (7th Cir. 1986).

Further, an official such as Defendant Hertz, the former Sheriff of Madison County, is only considered to be personally involved if (1) he participates directly in the constitutional deprivation, (2) he acts or fails to act with reckless disregard of the plaintiff's constitutional rights, or (3) the conduct that deprived the plaintiff of his constitutional right occurred at his direction or with his knowledge and consent. *Rascon*, 803 F.2d at 274; *Smith v. Rowe*, 761 F.2d 360, 269 (7th Cir. 1985); *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). It is not sufficient for a § 1983 plaintiff to show that a supervisory official was remiss in supervising the implementation of policy in force in an institution. Rather, to establish a claim against a supervisory official, there must be a showing that the official knowingly, willfully, or at least

recklessly caused the alleged deprivation by his action or failure to act." *Rascon*, 803 F.2d at 273-274.

Here, the evidence clearly establishes that Plaintiff's conditions of confinement did not pose a substantial risk of harm. In sum, there is no evidence that any Defendant, including Defendant Hertz, violated Plaintiff's constitutional rights. As such, there is no basis for holding Defendant Hertz liable in his individual capacity.

With regard to Plaintiff's attempts to impose liability on Defendant Hertz in his official capacity as the former Sheriff of Madison County, Illinois, this endeavor too must fail. Any claims against a defendant in his official capacity, including claims against Defendant Hertz, represent claims against Madison County, Illinois. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Boyce v. Moore*, 314 F.3d 884 (7th Cir. 2002); *Holmes v. Sheahan*, 930 F.2d 1196 (7th Cir. 1991); *Hill v. Shelander*, 924 F.2d 1370 (7th Cir. 1991). Therefore, in order to prevail in an official capacity claim, Plaintiff Sanford must show that Madison County's official policy or custom caused his injury. *See Perkins v. Lawson*, 312 F.3d 872 (7th Cir. 2002).

Specifically, in order to maintain a 42 U.S.C. § 1983 claim against Defendant Hertz, Plaintiff Sanford must demonstrate that his constitutional rights were violated by some official policy or custom. *Monell*, 436 U.S. at 694; *Springfield, Mass. v. Kibbe*, 480 U.S. 257 (1987); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Kunik v. Racine County, Wisconsin*, 946 F.2d 1574, 1582–83 (7th Cir. 1991) (affirming dismissal where complaint provided no basis for believing that allegedly illegal practices represented official policy, and where pleaded facts gave no reason to believe that alleged improprieties were more than a single occurrence); *Woods v. City of Michigan City, Ind.*, 940 F.2d 275, 277–78 (7th Cir. 1991); *Millspaugh v. County Dept. of Public Welfare*, 937 F.2d 1172, 1174 (7th Cir. 1991) (affirming summary judgment for

defendants where plaintiffs failed to identify any unconstitutional policy and show how its application caused their injury); *Holmes*, 930 F.2d at 1200-1201 (district court erred in denying summary judgment for defendants where pre-trial detainee failed to present evidence of any county policy or custom which caused him to be denied medical care); and *Hood v. City of Chicago*, 927 F.2d 312, 315 (7th Cir. 1991) (affirming dismissal where complaint made only conclusory allegation of municipal policy or custom).

In *Monell*, the United States Supreme Court held that municipalities are "persons" for purposes of 42 U.S.C. § 1983, and thus may be held liable for violations of civil rights, so long as the municipality has adopted or otherwise promulgated a policy or custom that violated a plaintiff's constitutional rights. 436 U.S. at 690 (1978). However, *Monell* does not allow for liability under § 1983 on a theory of *respondeat superior* or vicarious liability. *See Milestone v. City of Monroe, Wis.*, 665 F.3d 774 (7th Cir. 2011). In other words, misbehaving employees are responsible for their own conduct, and units of local government are responsible only for their policies, rather than misconduct by their workers. *Lewis v. City of Chicago*, 496 F.3d 645 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897 (7th Cir. 2007). Put another way, to prevail against a municipality under § 1983, it is not enough for a plaintiff to show that an employee of the municipality violated his constitutional rights; rather, the plaintiff must establish that his constitutional injuries were directly caused by a policy or custom of the municipality. *See Hahn v. Walsh*, 2014 WL 3906501, at *15 (7th Cir. Aug. 12, 2014) (*citing Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978)).

A plaintiff seeking to hold a municipality liable under § 1983 may show deliberate action that is attributable to the municipality itself in one of three ways: (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal

agent with final policymaking authority. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774 (7th Cir. 2011).

Here, it can only be assumed that Plaintiff Sanford is attempting to assert that Madison County, Illinois has a widespread policy and/or practice of violating the constitutional rights through conditions of confinement of pretrial detainees. However, Plaintiff has failed to establish the existence of any evidence establishing either an express municipal policy, or a widespread custom or practice of violating pretrial detainees' constitutional rights. Rather, the only bases for Plaintiff's claims are the self-serving allegations raised by Plaintiff. However, these self-serving allegations are insufficient to impose liability under *Monell*. More importantly, the evidence establishes that there are no unconstitutional policies at the Madison County Jail.

Further, under *Monell*, proof of a single incident of unconstitutional activity is not sufficient to impose liability. In particular, isolated incidents do not add up to a pattern of behavior that would support an inference of a custom or policy. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 796 (7th Cir. 2014). *See also Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014) ("a single incident – or even three incidents – do not suffice" to establish a widespread practice); *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) ("proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference"); *Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993) ("a single isolated incident of wrongdoing by a non-policymaker is generally insufficient to establish municipal acquiescence in unconstitutional conduct"); *Hahn v. Walsh*, 2014 WL 3906501, at *15 (7th Cir. Aug. 12, 2014) (stating that the widespread unofficial practice must be "so entrenched and well-known as to carry the force of policy").

{00357153.1}   16

Plaintiff Sanford has also failed to establish that a high-ranking official who has been delegated policymaking authority directly caused the alleged violations.

Under *Monell,* the "policymaker" prong is not a simple determination of whether a person with policymaking authority caused a constitutional deprivation. *See Gernetzke v. Kenosha Unified School Dist. No. 1,* 274 F.3d 464 (7th Cir. 2001). Municipal liability does not inexorably flow from a constitutional tort committed by a policymaker. *See Taylor v. Carmouche,* 214 F.3d 788 (7th Cir. 2000); *Auriemma v. Rice,* 957 F.2d 397 (7th Cir. 1991). In particular, not every action by a policymaker represents the policy of the municipality. *See Auriemma*, 957 F.2d at 399-401. If that were the case, the third prong of *Monell* would lead to vicarious liability against a municipality simply because a policymaker engaged in malfeasance. *Id*. at 400 ("If it were enough to point to the agent whose act was the final one in a particular case, we would have vicarious liability .... That a particular agent is the apex of a bureaucracy makes the decision 'final' but does not forge a link between 'finality' and 'policy.'").

In sum, the "policymaker" prong of *Monell* requires more than the act of a policymaker. It is necessary for the policymaker's act to have been in conformance with, or in the creation of, governmental rules that have the effect of law (and then the rule must violate the plaintiff's constitutional rights). *See Auriemma*, 957 F.2d at 400; *see also Gernetzke*, 274 F.3d at 469-70 (distinguishing between the apex of authority and the local government's conferral of that authority to a policymaker to act in conformity therewith). And, a policymaker's decision will rarely have the force of policy unless the decision will govern similar issues in the future. *See Auriemma*, 957 F.2d at 400 ("Unless today's decision ought to govern tomorrow's case under a law or a custom with the force of law, it cannot be said to carry out the municipality's policy."). A policymaker who acts outside of the rules does not thereby set new policy. Instead, that

person frustrates and violates the government's policy.  *Taylor*, 214 F.3d at 791; *Auriemma*, 957 F.2d at 400.  Here, Plaintiff Sanford has failed to establish that the actions of an individual with final policymaking authority caused the alleged constitutional violations.  More importantly, Plaintiff has failed to establish the existence of any constitutional violations.

Based on the preceding, Defendant Hertz is entitled to summary judgment.

Respectfully submitted,

LOWENBAUM LAW

/s/ *Heidi L. Eckert*

Heidi L. Eckert, #06271612
222 South Central Avenue, Suite 900
Clayton, MO 63105
(314) 746-4845 - *Phone*
(314) 746-4848 - *Fax*
heckert@lowenbaumlaw.com
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I have on March 22, 2016, served a true and correct copy of the foregoing via the Court's e-filing system upon the following:

Patrick J. Kenny, Esq.
Armstrong Teasdale LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
*Attorney for Plaintiff*

/s/ *Heidi L. Eckert*

/kds