## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ESMOND L. SANFORD,          )

          Plaintiff,     )

vs.          )   Case No.   14-cv-566-JPG-SCW

DONALD BUNTS, GARY BOST,   )
ROBERT HERTZ, MAYNARD HILL, and  )
ROBERT HOLLENBECK,    )

          Defendants.

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

This matter is before the Court on a motion for summary judgment (Doc. 82) filed by Defendants.  Plaintiff has filed a response in opposition to the motion (Doc. 108).  Defendants have filed a reply brief (Doc. 110).  The matter has now been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge J. Phil Gilbert pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (c)**, **Federal Rule of Civil Procedure 72(b)**, and **Local Rule 72.1(a)**.  Based on the following, it is **RECOMMENDED** that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment.

### FACTUAL BACKGROUND

Plaintiff's complaint was originally limited to his conditions of confinement claim against Defendant Madison County Jail.  Plaintiff amended his complaint on January

26, 2015 asserting several conditions of confinement claims and a deliberate indifference claim (Doc. 37).   Some of those claims were dismissed against the Jail and Sheriff Robert Hertz was substituted in his official capacity (Doc. 74).   Madison County was later added as a necessary party for damage purposes on the official capacity claims (Doc. 100).   The following claims remain in this case:   conditions of confinement claim against Defendants Bunts, Bost, and Hertz (in both his individual and official capacity) for an unhealthy diet causing Plaintiff's high blood pressure (Count I); conditions of confinement claim against Bost, Bunt, Hill, and Hertz (in his individual capacity) for cold showers in a cold facility (Count II); conditions of confinement claim against Bunt, Bost, Hollenbock, Hill, and Hertz (in both his individual and official capacity) for Plaintiff's inability to exercise (Count III); a conditions of confinement claim against Robert Hertz, in his official capacity, for routinely cold cells (Count IV); deliberate indifference claim against Bunt, Bost, and Hertz (in his individual capacity) for exposure to Hepatitis-C by allowing an infected inmate to use communal razors (Count V).

Turning to the facts of the case for purposes of this motion, the Court notes that neither party has provided the Court with any statement of undisputed facts.   In fact, neither motion includes any statement of facts.   Any facts included in this section have been gleaned from the arguments made by the parties in their briefs.

Plaintiff was housed as a pretrial detainee at the Madison County Jail from August 2, 2013 to August 13, 2014 (Doc. 108-1, ¶ 2).

### A. Count I

Plaintiff's first claim relates to the diet that Plaintiff was served while at Madison County Jail. Plaintiff was diagnosed with high blood pressure in 1996 prior to his incarceration at Madison County (Doc. 82-3, p. 2). He was diagnosed by Madison County Jail while being housed there on a prior charge (*Id.*). While Plaintiff took medication for his high blood pressure at that time, prior to his incarceration in 2013 he was not on blood pressure medication (*Id.* at p. 3; Doc. 108-3, p. 4; Doc. 108-1, ¶6). Plaintiff, at the time of his deposition, was currently on medication for his high blood pressure (Doc. 108-3, p. 3-4).

Plaintiff testified at his deposition that he believed the food served at the jail caused his high blood pressure (Doc. 108-3, p. 4). Plaintiff testified that the jail served food high in sodium and sugar (*Id.*). Plaintiff was served sandwiches, chips, honeybuns, and hotdogs that he believed contained high amounts of salt (Doc. 108-3, p. 4-5). He also received juice which contained high amounts of sugar (*Id.* at p. 4). He believes all of this contributed to his high blood pressure (*Id.*). Plaintiff testified that he believed the lunch was healthy as it included yams, fish, raviolis, and chicken breasts, although he stated that the raviolis were spicy (*Id.* at p. 5). But Plaintiff believed that the breakfast and dinners were not healthy as he was served honey buns for breakfast and cold cuts with chips, juice, and cookies for dinner (*Id.* at p. 5-6). Records from the jail indicate that inmates were served honey buns for breakfast and bread and deli meats for dinner, although the lunch was varied in meats and vegetables (Doc 82-1, p. 4-24).

Plaintiff indicated that he wrote to the healthcare unit asking for a different diet, but no one responded (Doc. 108-3, p. 5).   He wrote sick call slips, asking for different foods for dinner but did not receive a response (*Id*. at p. 6).   Plaintiff admitted that the jail file did not contain any sick call slips or kites but he believes he made his complaints in writing (Doc. 108-1, ¶24).   Plaintiff testified that he wrote Bost, Bunt, Hill, and Hollenbeck asking them to speak with the healthcare unit about receiving a different diet (Doc. 108-3, p. 6).   He spoke personally with Bunt who said he was "on top of it" but nothing ever changed with Plaintiff's diet (*Id*.).   He also wrote to Mr. Michael Funk, an employee of the Illinois Department of Corrections responsible for County Jail Standards, but he did not receive a response from him either (Doc. 108-1, ¶ 27-28).

Plaintiff testified that within a month of arriving at the jail he gained 30-40 pounds and was told by a nurse that his blood pressure was high (Doc. 108-3, p. 4). Plaintiff had an in-take examination two days after he entered Madison County Jail on August 5, 2013 at which time it was noted that his blood pressure was 158/100 according to Dr. Robert Blankenship, medical director at Madison County Jail (Doc. 82-2, ¶ 2 and 4).[1]   Plaintiff testified in his affidavit that he informed medical staff of his high blood pressure but he was not prescribed a special diet (Doc. 108-1, ¶21).   He was tested again on August 6 and 7, 2013 and his blood pressure was 138/100 and 137/88, respectively, which Blankenship noted can be considered high (Doc. 82-2, ¶4).   As a result of those readings, Plaintiff was provided medication for his blood pressure (*Id*.).   At that time,

---

[1] Neither Defendants nor Plaintiff have provided the Court with any medical records from Plaintiff's stay at Madison County Jail.

he was prescribed a water pill by the jail healthcare unit (Doc. 108-3, p. 4).

Plaintiff testified, however, that he did not make a specific request of the Defendants for different food (Doc. 108-3, p. 6).   He did not make a specific request for substitution of his sandwich to any of the guards (*Id*.).   Nor did he speak to Hertz about his dietary concerns (*Id*.).   He also did not inform anyone that the water pill was not working or that he needed additional medication (*Id*. at p. 7).   Plaintiff indicated that while on the water pill his blood pressure fluctuated (*Id*.).   He talked to Hill about headaches he was having and Hill told him to put in a sick call (*Id*.).   Plaintiff testified that the medical staff were responsive to his complaints about his blood pressure and took his pressure on a regular basis, noting when the pressure was normal and instructing him to take more water when it was high (*Id*.).

Plaintiff's blood pressure on May 27, 2014 was 140/90, within the normal range, according to Blankenship,[2] and Plaintiff was taken off of blood pressure medication (Doc. 82-2, ¶ 8).   A reading on July 26, 2014 was high and thus Blankenship re-prescribed the blood pressure medication (*Id*. at ¶ 9).   Defendant Bost testified that the jail complied with dietary requirements set forth by the Illinois County Jail Standards (Doc. 82-1, ¶ 3).

### B.  Counts II and IV

Plaintiff's Counts II and IV allege that he was exposed to extremely cold indoor

---

[2] It is not clear to the Court why Plaintiff's reading of 140/90 was considered within the normal blood pressure range when Plaintiff's later reading on July 16, 2014 of 132/86 was considered high and resulted in Plaintiff resuming his prescription for blood pressure medications.

temperatures and forced to take cold showers.   Count II is brought against Defendants Bost, Bunt, Hill, and Hertz in their individual capacities and Count IV is against Defendant Hertz in his official capacity.   Plaintiff testified that during the course of his detention at Madison County, the jail cells were below 60 degrees Fahrenheit year round (Doc. 108-1, ¶ 30).   Plaintiff testified at his deposition that he believed the temperature was below 60 and in the 50s from his own estimations and those of other inmates (Doc. 82-3, p. 5).   But Plaintiff indicated that he did not have a temperature gauge to determine the exact temperature in the cells (*Id.*).   Plaintiff did have a blanket to sleep with but he testified that it did not protect him from the cold (*Id.*).   Plaintiff also testified that he was not allowed to have socks while at the jail (Doc. 108-3, p. 14; Doc. 108-4, p. 4 ("There are no socks allowed in this facility…")).   Plaintiff testified that as a result of the cold, he suffered from numb fingers and feet (*Id.*).

Other inmates at Madison County Jail testified as to the cold experienced in the cells.   Justin Davenport testified that it was so cold he had to wear thermal tops and bottoms throughout his stay (Doc. 108-12).   He also testified that he was not allowed to have socks while at Madison County (*Id.*).   Thomas Ebersohl likewise testified that the jail was cold and Kenneth Turcott testified that he was housed at Madison County on numerous occasions between 2007 and March 2014 and that no matter the time of year, the air conditioning was always on at the jail (Docs. 108-13, 108-14).

Plaintiff testified that in addition to the cold air, the hot water went out in the jail for two weeks in February and March 2014 (Doc. 108-3, p. 8).   There was no hot water in

either the day room or the cells (*Id.*).   Plaintiff did testify that once he got out of the shower, he had a dry towel and clothes to put on (Doc. 82-3, p. 5).   Plaintiff testified that during this time he spoke with Officers Hare, Hill, Bost, Bunt, and Hollenbeck and that he wrote Bost, Hollenbeck, and Bunt (Doc. 108-3, p. 8).   A letter written to Bost on March 4, 2014 indicates that Plaintiff's cellblock had not had warm water since February (Doc. 108-15, p. 1).   Another letter written by Plaintiff to Bost on March 7, 2014 indicates that the temperatures in the cell house are cold (*Id.* at p. 2).   Plaintiff again wrote to Bost on April 30, 2014 about the cold water (*Id.* at p. 6; Doc. 108-10).   Plaintiff also wrote letters to Hill about the water and air on March 8, 2014, and similarly wrote to Bunt about the water and cold air on March 20, 2014, March 21, 2014, and May 4, 2014 (*Id.* at p. 3-7).   He also testified that on the fifteenth day without hot water, the inmates were taken to the Special Housing Unit to shower as that unit had hot water (Doc. 108-2, p. 8). The next day the hot water was turned on (*Id.*).

Gary Bost, superintendent at Madison County Jail, testified that during Plaintiff's stay at Madison County Jail, indoor cell temperatures were monitored and that between June and August of 2014, the temperatures ranged between 70 and 75 degrees (Doc. 82-1, ¶ 6-7).   He also acknowledged that there were issues with the hot water in Plaintiff's cellblock starting on February 28, 2014 and that inmates only had access to lukewarm or cold water until the hot water heater was fixed on March 19, 2014 (*Id.* at ¶ 9-12).   During this time period, Bost testified inmates had access to cold water and were taken to other cellblocks which had hot water to shower (*Id.* at ¶ 13).

### C. Count III

Plaintiff's Count III alleges that Plaintiff was denied an ability to exercise during the year that he was housed at Madison County Jail.   Plaintiff testified that during his year long stay he was only allowed access to the yard once in October 2013 (Doc. 108-1, ¶ 8; Doc. 108-3, p. 10).   Access to the recreation yard was only granted because Plaintiff's cellblock was shaken down and the inmates had to be removed from the cells (*Id*.). Plaintiff testified that during the times that he was not allowed yard access, he could exercise in his cell but the cell was too small to do much exercise (Doc. 108-3, p. 10).   He could also not run in place effectively because he had a cellmate (*Id*. at p. 10-11).   He was able to stretch and do sit-ups in his cell (*Id*.).   Plaintiff testified that he had access to the dayroom but he did not feel safe exercising in that space due to having issues with other inmates (*Id*. at p. 11).   He also testified that there was not enough room in the dayroom to exercise (*Id*. at p. 12; Doc. 108-9).   Plaintiff stated in his affidavit that the dayroom contained tables and other items which restricted floor space and did not provide enough room for exercise (Doc. 108-1, ¶ 11-12; Doc. 108-9).

Plaintiff testified at his deposition that he talked to Hill, Bost, Bunt, and Hollenbeck about not having access to the yard but they did not respond (Doc. 108-3, p. 12).   He testified that he complained to Hill and Hollenbeck several times and wrote the other Defendants (*Id*.).   He testified that he wrote a letter to Hollenbeck on April 1, 2014 and April 10, 2014 complaining about the lack of access to the yard and received no response from Hollenbeck (Doc. 108-1, ¶ 15-17; 108-15, p. 6; Doc. 108-10).

### D. Count V

Plaintiff's Count V alleges that Defendants Bunt, Bost, and Hertz (in his individual capacity) were deliberately indifferent in exposing Plaintiff to Hepatitis-C by allowing an infected inmate to use communal razors.   While Plaintiff was housed in Cellblock G-South from April 23, 2014 to May 10, 2014, there was an inmate infected with Hepatitis-C also on the cellblock (Doc. 108-1, ¶47).   Defendant Bost testified in his affidavit that the Illinois County Jail Standards require that safety razors not be shared and that battery powered razors can be used, but the razor must be sanitized after each use (Doc. 82-1, ¶14).   Bost testified that the rechargeable electric razor was provided to each cellblock and each cellblock also had cleaning solution to sanitize the razor after each use (*Id*. at ¶ 15).   Bost also testified that inmates with Hepatitis-C were provided with separate razors (*Id*.).   Plaintiff, however, testified that the infected inmate was not provided a separate razor and that he used the communal razor provided to the cellblock (Doc. 108-1, ¶ 49-52; 108-3, p. 12).   Plaintiff used the communal razor before learning that the infected inmate was also using the razor (*Id*. at ¶52).   He used the razor almost every day, shaving both his face and head (Doc. 108-3, p. 13).   The infected inmate, David Crites, told the inmates in the cellblock that he had Hepatitis-C and Plaintiff saw him use the communal razor (*Id*.).   Plaintiff testified that Crites indicated that he tried to get a special razor but was denied the request (*Id*.).   Because of Plaintiff's fear of using the razor that Crites used, Plaintiff purchased Magic Shave from the commissary to remove his head hair (*Id*.).

LEGAL STANDARDS

**A. Summary Judgment Standard**

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)). *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)). A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent

evidence to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931–32 (7th Cir. 2001) (citations and quotations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).** *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

## B. Conditions of Confinement

As a pretrial detainee, Plaintiff's conditions of confinement claim arises under the Due Process Clause of the Fourteenth Amendment. *Klebanowski v. Sheahan*, **540 F.3d 633, 637 (7th Cir. 2008).** Eighth Amendment case law can also generally be used in evaluating such Fourteenth claims for all relevant purposes; the standards are interchangeable. *See Rice ex rel. Rice v. Corr. Meds.Servs.*, **675 F.3d 650, 664 (7th Cir. 2012);** *Forest v. Prince*, **620 F.3d 739, 744-45 (7th Cir. 2010).** Inmates must be provided with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* **(citations omitted).** In order to succeed on a claim for inhumane conditions of confinement, an inmate must establish:

(1) that he was housed under conditions that were "'sufficiently serious' so that 'a [jail] official's act or omission results in the denial of the minimal civilized measure of life's necessities'", and (2) the defendant was deliberately indifferent to that risk. *See Townsend v. Fuchs*, **522 F.3d 765, 773 (7th Cir. 2008)**; *Grieveson v. Anderson*, **538 F.3d 763, 775 (7th Cir. 2008)**.   In order to prove deliberate indifference, the plaintiff must show that the officials actually knew of the condition but refused to take reasonable steps to resolve it.   *Townsend*, **522 F.3d at 773**; *Grieveson*, **538 F.3d at 775**.

## C. Deliberate Indifference to Medical Care

As Plaintiff was housed at the Madison County Jail, his claim arises under the Fourteenth Amendment Due Process Clause, "which affords pretrial detainees the same protection against deliberate indifference as the Eighth Amendment guarantees to the convicted." *Smith v. Knox County Jail*, **666 F.3d 1037, 1039 (7th Cir. 2012)**.   The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976))**.   In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, **414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted)**.

The second prong of the deliberate indifference analysis requires that a plaintiff show that officials acted with a sufficiently culpable state of mind, namely, deliberate

indifference.  "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'"  *Estelle*, **429 U.S. at 104 (quoting** *Gregg v. Georgia*, **428 U.S. 153, 173 (1976)).**  "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense."  *Duckworth v. Franzen*, **780 F.2d 645, 652-53 (7th Cir. 1985).**  Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough.  *Id.* **at 653;** *Shockley v. Jones*, **823 F.2d 1068, 1072 (7th Cir. 1987).**

Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference.  *Greeno*, **414 F.3d at 653**. "Whether a[n]…official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a[n]… official knew of a substantial risk from the very fact that the risk was obvious."  *Farmer v. Brennan*, **511 U.S. 825, 842 (1994) (citations omitted).**  An inmate does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs."  *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008) (quoting** *Sherrod v. Lingle*, **223 F.3d 605, 611 (7th Cir. 2000)).**

The Seventh Circuit has noted that the standard is "a high hurdle..because it

requires a 'showing as something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Roasrio v. Brawn*, **670 F.3d 821-22 (7th Cir. 2012) (***Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)).** "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010) (quoting** *Farmer*, **511 U.S. at 843).**

### D. *Monell*

A municipality may not be held liable under § 1983 based on a theory of *respondeat superior* or vicarious liability. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, **436 U.S. 658, 694 (1978).** Rather, a municipality may only be held liable under § 1983 for constitutional violations caused by the municipality itself through its own policy or custom. *Id.* A plaintiff can establish a "policy or custom" by showing: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable v. City of Chicago*, **296 F.3d 531, 537 (7th Cir. 2002).** In addition to showing that the municipality acted culpably in one of those three ways, a plaintiff must prove causation, demonstrating that the municipality, "through its deliberate conduct,...was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, **520 U.S. 397, 404 (1997).**

CONCLUSIONS OF LAW

### A.  Diet (Count I)

Defendants Bunt and Bost first argue that they are entitled to summary judgment on Plaintiff's claim that he was subjected to an unhealthy diet causing him to have high blood pressure.   Plaintiff argues that Defendant Bunt and Bost were not deliberately indifferent in failing to provide a nutritionally adequate diet, but rather were deliberately indifferent in failing to respond to his requests for a specialized diet to prevent his high blood pressure.   While Plaintiff's complaint is pled as a conditions of confinement claim, what Plaintiff alleges in his response and what is argued by both sides is a straight deliberate indifference to medical needs claim.   Plaintiff argues that he should have been provided with a special diet given his high blood pressure and instead Defendants were deliberately indifferent in failing to provide him with that diet, thus exasperating his high blood pressure.

The Court first notes that there is no evidence that Plaintiff's diet at the jail posed an objectively serious harm to his blood pressure.   Plaintiff argues that the diet exacerbated his high blood pressure.   But while Plaintiff testified that he believed that the foods served were high in sodium and sugar, which led to his high blood pressure, at the summary judgment stage, Plaintiff's own suspicions are not enough.   Instead, the evidence indicates that Plaintiff suffered from high blood pressure before being incarcerated at Madison County Jail and was diagnosed in 1996.   Although Plaintiff testified that he was not taking blood pressure medication at the time that he entered the

jail, Blankenship testified that Plaintiff's blood pressure reading two days after entering the jail were high, a fact that Plaintiff does not dispute.   Further, Plaintiff's blood pressure continued to stay elevated during the first few days of his detention, leading to the healthcare unit prescribed Plaintiff a water pill.   His readings throughout his time at the jail fluctuated, according to Plaintiff, but his blood pressure in May 2014 was within normal ranges, according to Blankenship, resulting in the termination of his prescription.   While the honey bun and deli meats might be high in sodium as Plaintiff argues, there is no evidence that it posed an objectively serious risk to his blood pressure or that it exasperated his condition as Plaintiff alleges.

Further, the Court finds no evidence of deliberate indifference as to Bunt and Bost.   Plaintiff testified that he wrote Bunt and Bost requesting that they ask the healthcare unit about obtaining a special diet.   But Plaintiff also acknowledges that he was monitored by the healthcare unit and provided with prescription medication for his high blood pressure.   Plaintiff also testified that he filled out sick call slips and although Plaintiff testified those were not responded to, he admitted that he was seen on the blood pressure line regularly and they would inform him if his blood pressure was normal or high, and that they were responsive to his inquiries regarding his blood pressure (Doc. 108-3, p. 7).   He also admits that he was not prescribed a special diet from the healthcare unit, although he wrote letters to healthcare.   As non-medical providers in this case, both Defendants were allowed to rely on purported care that he was receiving from the healthcare unit.   *See Johnson v. Doughty*, **433 F.3d 1001, 1010 (7th Cir. 2006);** *Hayes v.*

*Snyder*, **546 F.3d 516, 527 (7th Cir. 2008) (citing** *Greeno v. Daley*, **414 F.3d 645, 655-56 (7th Cir. 2005)).** *Johnson v. Snyder*, **444 F.3d 579, 585-86 (7th Cir. 2006),** *overruled on other grounds Hill v. Tangherlini*, **724 F.3d 965, 967 n. 1 (7th Cir. 2013)(health care administrator who reviewed medical records and relied on doctor's diagnosis in responding to inmate's grievance was not deliberately indifferent);** *Greeno v. Daley*, **414 F.3d 645, 655 (7th Cir. 2005) (prison official who reviewed complaints and verified with staff that inmate was receiving treatment was not deliberately indifferent);** *Hayes*, **546 F.3d at 527 (no deliberate indifference when grievance officer investigated and referred the complaint to medical staff);** *Spruill v. Gillis*, **372 F.3d 218, 236 (7th Cir. 2004) (non-medical official is able to rely on the belief that a prisoner is in capable hands when under the care of medical experts).** Thus, the undersigned finds no evidence of deliberate indifference in Defendants failing to provide him with a special diet that was not prescribed to him by the healthcare unit.

The undersigned also finds that Hertz is entitled to summary judgment in his individual capacity. The doctrine of *respondeat superiour* is not applicable to § 1983 claims, thus a defendant can only be held liable if he was "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, **266 F.3d 724, 740 (7th Cir. 2001) (quoting** *Chavez v. Ill. State Police*, **251 F.3d 612, 651 (7th Cir. 2001)).** An individual can only be held liable for his or her own personal actions and their own knowledge, and they are not liable for the knowledge or action of those individuals whom they supervise. *See Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011); Burks*

*v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).   "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable."   *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001).   However, a supervisor can be personally involved in the violation when he "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge or consent." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986); *Lanigan v. Village of East Hazel Crest*, Ill., 110 F.3d 467, 477 (7th Cir. 1997); *Sanville*, 251 F.3d at 740.   Thus, Sheriff Hertz cannot be held liable in his individual capacity just because he is the sheriff and in charge of the employees in the jail.

Here, there is no evidence that Hertz was aware of the problems with Plaintiff's blood pressure or dietary concerns.   Plaintiff admitted that he only wrote to Hertz on two occasions about the cold temperatures and showers (Doc. 108-3, p. 6).   He did not write to Hertz on any other topic nor did he talk to Hertz in person.   Plaintiff admitted in his deposition that he never saw Hertz during his detention at the jail (*Id.*).   While Plaintiff testified that he wrote Michael Funk, an employee at the Illinois Department of Corrections dealing with County Jail Standards, there is no indication that Funk forwarded Plaintiff's concerns to Hertz or that Funk even received Plaintiff's letters. Plaintiff testified that he did not receive any responses from Funk.   There is simply no evidence that Hertz was aware of Plaintiff's issues with the diet or that he was responsible for denying Plaintiff a special diet for his blood pressure.   Further, Hertz

cannot be held liable under *Monell* when there is no underlying constitutional violation by an employee of the municipality.   *Sallenger v. City of Springfield, Ill.*, **630 F.3d 499, 504 (7th Cir. 2010).**   As such, the undersigned **RECOMMENDS** that summary judgment be **GRANTED** as to Bost, Bunt, and Hertz, in both his individual and official capacity.

### B. Cold Showers in a Cold Facility (Count II)

Defendants Bost, Bunt, Hill, and Hertz (in his individual capacity) argues that they are entitled to summary judgment because Plaintiff was not subjected to cold temperatures.   Inmates have a constitutional right to be protected from the extreme cold.   *Dixon v. Godinez*, **114 F.3d 640, 643 (7th Cir. 1997);** *Hopkins v. Klindworth*, **556 Fed. Appx. 497, 499 (7th Cir. 2014);** *Antonelli v. Sheahan*, **81 F.3d 1422, 1433 (7th Cir. 1996);** *Murphy v. Walker*, **51 F.3d 714, 721 (7th Cir. 1995).**   In order to determine whether the cold denied a plaintiff's minimum standard of civilized necessities, the Court must look at several factors including: the severity of the cold, the duration, any alternative means that the inmate had to keep warm, the appropriateness of those alternative means, and any additional conditions which plaintiff was subjected to.   *Id.* **at 643.**

In viewing the evidence in the light most favorable to Plaintiff, a jury could find that Plaintiff was subjected to cold conditions in both his cellhouse and shower during February through April of 2013, such that he was denied the minimum standard of civilized necessities.   Plaintiff testified that he was subjected to cold conditions in his

cellhouse, noting that the air felt like it was in the 50s (Doc. 82-3, p. 5).   Plaintiff offered testimony that he was subjected to cold conditions and offered letters to the Defendants indicating that the air was cold, so cold that his hands and feet were turning colors. While Plaintiff argues that he was subjected to cold temperatures the entire time that he was at Madison County, the evidence indicates that Plaintiff complained about the cold in March and April, during the time that he was also without access to hot water.   In addition to the extended duration of the cold, Plaintiff also testified that he was only provided pants and shirts, but no socks (Doc. 108-3, p. 14).   While Plaintiff did have long johns, he was not provided those by the prison, he purchased those from the commissary (*Id.*).   Further, while he had access to a blanket, Plaintiff testified it did little against the cold (Doc. 82-3, p. 5).

While Defendants argue that the temperature was routinely between 70 and 75 degrees, the only evidence they offer of this constant temperature are from temperature readings from July and August 2014 (Doc. 82-1, p. 25-318).   These readings were only taken after Plaintiff's complaint was filed and Defendant Bunt noted in a letter to Defendant Hertz that daily temperatures were not kept prior to Plaintiff's complaints (Doc. 108-11).   The jail only began taking daily temperatures on June 24, 2014 and at that time noted that the temperatures were in the low to mid 70s (*Id.*; Doc. 82-1, p. 4-318). But as Plaintiff points out, this was during a summer month of June and not in February and March when Plaintiff initially complained of cold temperatures.   Thus, Defendants' evidence only creates an issue of fact as to whether the temperatures in the prison in

February, March, and April were unreasonably cold as neither side has offered evidence of the exact temperature in the cellhouse.   Plaintiff, however, indicated in his letters that it was cold beyond normal temperatures and that his extremities were changing colors.

Plaintiff has also offered evidence that the Defendants were aware of Plaintiff's concerns, but ignored them.   Plaintiff offered letters written to Defendants Bost, Bunt, and Hill complaining about the cold air and water in his cellhouse during March and April.   Plaintiff testified that he received no response to those complaints.   Plaintiff also testified in his deposition that he forwarded two correspondences to Hertz about the water and cold air temperatures (Doc. 108-3, p. 6, 10).

In addition to the cold air, Plaintiff also testified that he was without hot water in his cellhouse from February 28, 2014 to March 19, 2014.   There is also a dispute of fact as to whether Plaintiff was subjected to cold water during this time period.   Defendants acknowledge that the hot water heater broke on February 28, 2014 and that it was not fixed until March 19, 2014.   Defendants also acknowledge that inmates had access to only cold or lukewarm water during that time period.   But Bost testified that during this time period inmates were also allowed to use the hot showers in other cellhouses. Plaintiff, however, disputes that testimony, as he testified that he was only allowed to take a shower in the Special Housing Unit on one occasion, the day prior to the hot water being turned back on.   Thus, there is an issue of fact as to whether Plaintiff had access to hot showers during the relevant time period.   Plaintiff has offered evidence that he was subjected to extreme cold in his cell and did not have access to cold water during the

months of February, March, and April 2014, and during that time he did not have access to socks to keep his feet warm. The undersigned finds that there is enough evidence from which a jury could find that this lack of hot water in addition to the cold air denied Plaintiff of the minimum standard of civilized necessities and, accordingly, **RECOMMENDS** that the Court **DENY** summary judgment as to the Defendants on this claim.

### C. Lack of Exercise (Count III)

Defendants Bost, Bunt, Hill, Hollenbeck, and Herz (in his individual capacity) also argue that they are also entitled to summary judgment on Plaintiff's lack of exercise claim because Plaintiff was able to exercise in both his cell and the dayroom. The Seventh Circuit has found that the denial of yard privileges for more than 90 days can be cruel and unusual. *Pearson v. Ramos*, **237 F.3d 881, 884 (7th Cir. 2001)**. They also specifically held that the lockdown of a segregated inmate for a six month period, during which the inmate's time outside of his cell was severely limited, constituted an objectively serious condition. *Delaney v. DeTella*, **256 F.3d 679, 684 (7th Cir. 2001)**. However, legitimate penological reasons can justify the restriction. *Id.* The proper guidepost is the "norm of proportionality", which requires the Court to weigh the duration of the lockdown against the nature of the infraction that caused it. *Pearson*, **237 F.3d at 885;** *Turley*, **729 F.3d 645, 652 (7th Cir. 2013)**.

However, access to alternative forms of recreation and access to common areas can mitigate a lengthy denial of yard privileges. *Delaney*, **256 F.3d at 684 (citing** *Harris*

*v. Fleming*, **839 F.2d 1232, 1236 (7th Cir. 1988);** *Shelby County Jail Inmates v. Westlake*, **798 F.2d 1085, 1089 (7th Cir. 1986)).**   In *Harris*, the inmate was not denied all access to exercise, being able to move about the unit and could do aerobics, push-ups, and jog in place in his cell.   *Harris*, **839 F.2d at 1236.**   The Seventh Circuit found no serious deprivation where the inmate had only been denied access to the yard, and not all exercise, over the short period of four weeks.   *Id.*   Similarly, the Seventh Circuit found no serious deprivation where the inmate at a county jail had access to exercise bikes and other indoor activities, although he was denied access to the yard.   *Shelby*, **798 F.2d at 1089.**   The Court noted, however, that inmates were housed in the jail for very short periods of time, usually only ten days, and the program presented at the jail might not pass constitutional muster at a prison where inmates are incarcerated for much longer periods of time.   *Id.*

Here, the undersigned cannot say at this stage that Plaintiff's year long stretch with access to the yard on only one occasion does not constitute a serious deprivation. Plaintiff has certainly offered evidence from which the jury could find that he was subjected to an objectively serious deprivation.   *Pearson*, **237 F.3d at 885 (The norms of proportionality can be violated if the prison "impos[ed] a 90-day denial of yard privileges for some utterly trivial infraction.");** *Delaney*, **256 F.3d at 684 (Denial of yard privileges for 6 months without something more than a conclusory statement of penological interest can constitute a significant and serious deprivation.);** *Antonelli v. Sheahan*, **81 F.3d 1422, 1432 (7th Cir. 1996) ("Lack of exercise may rise to a**

**constitutional violation in extreme and prolonged situations.”**).   Plaintiff testified that he was denied access to the yard for almost an entire year as he only had access to the yard on one occasion in October 2013.   Thus, Plaintiff went without yard access from October 2013 to August 2014 as he testified to in his deposition.   Defendants have also failed to offer any penological justification for the lack of yard access.

While Defendants argue that Plaintiff had alternative means of exercising in his cell and the dayroom, Plaintiff actually testified that he had very little room in his cell to exercise given the cell's size and the fact that he had a cellmate.   Although Plaintiff acknowledged he had access to the dayroom, there is no indication in the record how often he had access.   Further, Plaintiff testified that he could not exercise in the dayroom due to the limited floor space.   Even in cases where inmates had access to other indoor exercise opportunities, the Seventh Circuit noted that the restriction from the yard in those cases were short, normally days or weeks.   Here, Plaintiff was denied access to the yard from October 2013 to August 2014 with no indication as to the penological interest for the denial (Doc. 10-8-3, p. 11).   Thus, the undersigned finds that the testimony regarding the dayroom presents an issue of fact as to whether the access mitigated Plaintiff's nearly complete lack of access to the yard, such that it did not cause a serious deprivation.

Plaintiff has also presented evidence that he informed Bunt, Bost, Hill, and Hollenbeck about his lack of access to the yard.   Plaintiff testified that he spoke with the four defendants and specifically recalled talking with Hill during the first week at the jail

(Doc. 108-3, p. 12).   Plaintiff also testified that he spoke with Hollenbeck who told him he would see what he could do (*Id*.).   Plaintiff also testified in his affidavit that he complained verbally to Bost, Bunt, and Hill and wrote Hollenbeck letters complaining about the lack of access to the yard (Doc. 108-1, ¶¶ 15-17; 108-15, 6).   However, there is no evidence that he informed Hertz personally about his complaints of lack of exercise. Further there is no evidence that the jail had a policy preventing access to the yard.   To the contrary, the jail's policy was to allow at least one hour of outside the cell exercise per day, with the exercise taking place outside, weather permitting (Doc. 108-2, p. 18). Plaintiff fails to point to any policy or practice by the jail that would constitute *Monell* liability.   Thus, the undersigned **RECOMMENDS** that summary judgment be **DENIED** as to Bunt, Bost, Hill, and Hollenbeck, but **GRANTED** as to Hertz in his personal capacity and his official capacity, on the *Monell* claim.

### D. Deliberate Indifference to Hepatitis-C (Count V)

Defendants argue that they are entitled to summary judgment on Plaintiff's deliberate indifference claim because Plaintiff was not exposed to Hepatitis-C. Defendants argue that the policy at the Madison County Jail was to provide separate razors to those inmates with infectious diseases.   Plaintiff acknowledges that the Madison County Sheriff's Office Manual requires separate razors for infected individuals.   But Plaintiff has provided evidence that Defendants did not follow that policy.   Plaintiff testified that there was one razor on the cellblock and that razor was shared with Inmate Crites, who had Hepatitis-C.   Plaintiff testified that Crites did not

have a separate razor and in fact stated that he had tried to obtain a separate razor from the jail, but his request was denied.   Plaintiff testified that he verbally complained to Defendants Bost and Bunt but that they did not do anything in response and Crites continued to use the communal razor (Doc. 108-1, ¶ 54).[3]   Thus, the undersigned finds there is a dispute of fact as to whether Defendants Bost and Bunt allowed Crites to use the communal razor despite Plaintiff's complaints.

Defendants also argue that Plaintiff did not contract Hepatitis-C while he was in jail.   The Court first notes that Plaintiff testified that he didn't currently have Hepatitis-C, although he subsequently testified that he had not been tested for the disease, did not know the symptoms of the disease, and had asked about testing at the prison where he is currently incarcerated but was denied testing (Doc. 108-3, p. 12).   Further, a physical injury is not required for relief under § 1983.   ***Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012).**   While Plaintiff may not be able to obtain mental or emotional damages absent a physical injury, Plaintiff could still be entitled to nominal and   punitive   damages.   ***Id.* at 614.**   Thus, Plaintiff can sustain his claim without showing that he contracted Hepatitis-C.

As to Plaintiff's claim against Defendant Hertz in his individual capacity, there is no evidence that Hertz was aware of the issues with the communal razor.   Plaintiff never testified that he wrote or spoke to Hertz about the communal razor.   ***See Gray v.***

---

[3] Defendants argue that Plaintiff failed to establish the jail had a policy regarding the razors which put him at a substantial risk of serious harm.   But Plaintiff's complaint does not allege *Monell* liability as to the deliberate indifference claim.   Instead, Plaintiff's complaint alleges that Defendants Bunt, Bost, and Hertz (in his individual capacity) were deliberately indifferent to Plaintiff's risk of harm by allowing Crites to use the communal razor.

*Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) (warden must know and disregard a serious risk to inmate health or safety and can be put on notice with communication that is sufficient to put the warden on notice of the conditions at issue).   Thus, the undersigned **RECOMMENDS** that the Court **GRANT** summary judgment as to Defendant Hertz, but **DENY** summary judgment as to Bunt and Bost.

### E. *Monell* Liability

Defendant Hertz also argues that he is entitled to summary judgment in his official capacity on the *Monell* claims against Madison County, Illinois.   Plaintiff's complaint alleges *Monell* claims under Counts III and IV.[4]

Here, the undersigned **RECOMMENDS** that the Court **DENY** summary judgment as to Count IV under *Monell*.   Although Plaintiff acknowledges that there is no written policy on the appropriate temperature at the jail (Doc. 108-2),   Plaintiff has offered evidence that the jail kept the temperature in the prison below 60 degrees. Plaintiff has also offered testimony from other inmates who testified when they stayed at the jail that it was always cold, that the air conditioner was on whether it was winter or summer, that it was so cold they needed thermals, and they were not allowed socks (Doc. 108-12, 108-13, 108-14).   Further, Plaintiff testified that he asked Defendant Bunt to turn up the heat and Bunt replied that the jail was kept at low temperatures to keep the germs down (Doc. 108-1,¶ 35).   The undersigned finds enough evidence from which

---

[4] While Plaintiff originally had a claim under *Monell* for Count I regarding Plaintiff's diet, the undersigned, as stated earlier in this Report and Recommendation, that there is no evidence of deliberate indifference in regards to Plaintiff's diet.   Thus, a *Monell* claim for Plaintiff's diet also must fail.

a jury could find that the jail had a wide-spread practice of keeping the jail at inappropriate temperatures.   While Defendants have offered evidence that the temperatures were maintained in the 70s, those temperature readings were taken only in the summer and only after Plaintiff filed his complaint and not the time period alleged in Plaintiff's complaint.

However, the Court finds no policy or custom in place denying Plaintiff access to outside exercise (Count III).   In fact, Plaintiff presented the Madison County Sheriff's Department Manual which actually instructs that inmates be given one hour of exercise per day.   The Manual also instructs that the exercise take place outdoors, weather permitting.   Thus, there is no evidence of a policy or custom that denied Plaintiff access to outside exercise.

Plaintiff, instead, argues that he should be allowed to proceed under a failure to train policy for his claim regarding failure to exercise.   However, the Seventh Circuit has found only limited circumstances where such a failure to train is considered a policy under § 1983.   *Robles v. City of Fort Wayne*, **113 F.3d 732, 735 (7th Cir. 1997).**   Such a failure to train can amount to *Monell* liability when the entity fails to train "its employees 'with respect to a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face'" and where it fails "to provide further training after learning of a pattern of constitutional violations involving the exercise of…discretion."   *Robles*, **113 F.3d at 735.**   Here, Plaintiff alleges that Hertz failed to train jail personnel on how to respond appropriately to Plaintiff's complaints even

though the manual stated that staff is expected to take prompt and appropriate action to address health issues and communications should be responded to in a timely manner. The only evidence Plaintiff presents, however, is that there were policies which Defendants failed to follow.   But there is no evidence that this failure to follow the manual was due to a lack of training on Hertz's part.   Instead, there is only the evidence of the individual Defendants' failure to follow the policy, and such failure is not even a constitutional violation in and of itself.   *Thompson v. City of Chicago*, **472 F.3d 444, 454 (7th Cir. 2006).**   Nor is there any evidence that the Defendants were not trained on the policies in the manual.   Without such evidence, Plaintiff cannot sustain a failure to train claim under *Monell*.   Accordingly, the undersigned **RECOMMENDS** that the Court **GRANT** Defendant Hertz's motion for summary judgment on the remaining *Monell* claims.

## CONCLUSION AND RECOMMENDATION

Accordingly, it is **RECOMMENDED** that the Court **GRANT IN PART AND DENY IN PART** Defendants' motion for summary judgment.   Specifically, it is **RECOMMENDED** that summary judgment be **GRANTED** as to Bost, Bunt, and Hertz, in both his individual and official capacity, on Plaintiff's Count I alleging deliberate indifference to Plaintiff's diet.   However, it is **RECOMMENDED** that the Court **DENY** summary judgment as to Bost, Bunt, Hill, and Hertz (in his individual capacity) on Plaintiff's Count II alleging that he was subjected to cold temperatures and water.   The undersigned also **RECOMMENDS** that the Court **DENY** summary judgment as to

Hertz in his official capacity on Count IV alleging cold temperatures.    The undersigned also **RECOMMENDS** that summary judgment be **DENIED** as to Bunt, Bost, Hollenbeck, and Hill on Plaintiff's Count III regarding his inability to exercise but **GRANTED** as to Hertz in both his official and individual capacity.    Accordingly, it is **RECOMMENDED** that Hertz, in his official capacity, be **GRANTED** summary judgment on Count I and Count III.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.    The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.    *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).**    Accordingly, Objections to this Report and Recommendation must be filed on or before <u>**January 5, 2017**</u>.

**IT IS SO ORDERED**.
DATED: December 19, 2016.

/s/ Stephen C. Williams
STEPHEN C. WILLIAMS
United States Magistrate Judge